**The F & M SCHAEFER BREWING CO.,**
**Petitioner-Appellee,**

v.

**LOCAL 49, INTERNATIONAL UNION OF UNITED BREWERY, FLOUR, CEREAL, SOFT DRINK AND DISTILLERY WORKERS OF AMERICA, Respondent-Appellant.**

**No. 347, Docket 34007.**

United States Court of Appeals
Second Circuit.

Argued Dec. 5, 1969.

Decided Jan. 16, 1970.

Hays, Circuit Judge, dissented.

Bernard N. Katz, Philadelphia, Pa. (Meranze, Katz, Spear & Bielitsky, Philadelphia, Pa., Steinberg & Wiley, Theodore Wiley, New York City, on the brief), for respondent-appellant.

David I. Goldblatt, New York City (Proskauer, Rose, Goetz & Mendelsohn, Edward Silver, New York City, on the brief), for petitioner-appellee.

Before WATERMAN, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, Harold R. Tyler, Jr., J., staying arbitration of a grievance brought by Local 49, International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America (the Union), under a collective bargaining agreement with the F & M Schaefer Brewing Co. (the Company). The litigation began in the state courts when the Company sought to enjoin an arbitration proceeding instituted by the Union. The Union removed the action to the federal court and filed answering papers which sought to compel arbitration. Both parties moved for summary judgment on the basis of affidavits and exhibits. Thereafter, Judge Tyler granted the Company's motion and stayed the arbitration; the Union's cross-motion was denied. On the Union's appeal, we hold that it was error to stay the arbitration.

The collective bargaining agreement, which runs from May 1, 1968 to April 30, 1971, covers drivers and helpers employed by the Company to distribute beer from the Company's depot in Syracuse, New York. The controversy that led to this litigation arose in April 1969.

Prior to that time, deliveries of beer to the Company's customers in the Utica-Rome area of New York State had apparently been handled through a local distributor. In April, the Company began to use its own employees, which were represented by the Union, to make the deliveries formerly handled by the independent distributor. Shortly thereafter, the Union filed a grievance as follows:

Want to be paid a fair and just wage for traveling time on new route's (sic) started April 10, 1969 which take in the cities of Utica and Rome and surrounding territories.

According to the slim record before us, the Union then submitted to the New York State Board of Mediation for arbitration the questions of "proper method of compensation and constitution of the runs." In May, the Company brought its action to stay the arbitration.

The contract provides procedures for "GRIEVANCES AND ARBITRATION" in Section 21, which provides in subsection (b):

Other grievances, disputes, or differences relating to the interpretation or application of this agreement shall be taken up in the first instance by the appropriate Union agent and the Employer's representatives.

If a mutually satisfactory adjustment is not arrived at by them within five (5) days, unless extended by mutual agreement, the matter shall be submitted for arbitration by an arbitrator designated by the New York State Board of Mediation, and the award of such arbitrator shall be final and binding on both sides.

The Company's position—argued successfully before Judge Tyler—is that the grievance does not relate to "the interpretation or application" of any section of the agreement and is therefore not arbitrable. The Union retorts that this is not so and refers to various sections of the contract upon which it relies.

The teaching of the cases is plain. We are instructed in United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S. Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960):

An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

Indeed, in United Steelworkers of America v. American Manufacturing Co.; 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L. Ed.2d 1403 (1960), we are told:

The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of *even frivolous claims* may have therapeutic values of which those who are not a part of the plant environment may be quite unaware. [Emphasis added; footnotes omitted.]

We turn from the applicable law to the specific grievance here involved. The Union's basic claim is that the Company cannot apply the contract rates to work that is radically different (here presumably a long-distance run) and not in existence when the contract was negotiated. The Company argues that the agreement provides no geographical limit on the deliveries to which the contract rates apply. The Union's position may not be a strong one but its claim is certainly not unusual; disputes over alleged changes in job content or creation of new jobs are common.[1] The Union's

---

1. See, e. g., Schotts Bakery, Inc. v. Teamsters Local 949, 69–1 ARB ¶ 8118 (1968) (increase in duties of drivers); R & J

Dick Co. v. Int'l Ass'n of Machinists, 65–2 ARB ¶ 8508 (1965). Such a grievance may in fact be arbitrable even

grievance here is a dispute about "application" of the agreement's pay rates to "new" work. Accordingly, it falls squarely within the terms of the arbitration provisions. Whether the Union's position on the merits is weak or strong is irrelevant; that is to be determined by the arbitrator. While we have recognized that a grievance may be so outrageous as to pervert the grievance procedure, see International Union of Electrical Workers v. General Electric Co., 407 F.2d 253, 259 n. 12 (2d Cir. 1968), cert. denied, 395 U.S. 904, 89 S.Ct. 1742, 23 L.Ed.2d 217 (1969), this case is far short of that.

The district judge was evidently led astray by the phrasing of the initial grievance—"[w]ant to be paid a fair and just wage * * *." The judge held that since the arbitrator is not given the power to fix new rates, "submission of this grievance to him would require him to exceed his powers." However, as the Union points out in this court, the primary issue before the arbitrator will be whether the existing rates do apply to the "new" work. If they do not, it does not automatically follow that the arbitrator will try to fix new ones, and we, of course, express no opinion on that. For example, the arbitrator may hold that the men may properly refuse to do the work until the parties agree on a new rate.[2] However, that would go only to the remedy if the arbitrator agrees with the Union in its basic argument that the contract rates do not apply to the new Rome-Utica run.

The Company relies heavily on our decision in Torrington Co. v. Metal Products Workers, 362 F.2d 677 (2d Cir. 1966) (2–1). However, that case is not controlling here. In *Torrington*, we were concerned with the court's power to set aside an award when, according to the majority, the arbitrator had made clear that he did not rely on provisions of the contract. Indeed, in *Torrington*, we pointed out that the question of the arbitrator's authority to make a particular award was best left to the arbitrator initially, so that the court could receive "the benefit of the arbitrator's interpretative skills as to * * * his contractual authority." 362 F.2d at 680 n. 6. Here, we are asked to prevent arbitration in the first place. To do so on the theory that we should not require a useless act misconceives the possibilities open to an arbitrator and ignores the explicit lesson of the Trilogy, quoted above, that "[t]he processing of even frivolous claims may have therapeutic values."

Judgment reversed for proceedings consistent with this opinion.

HAYS, Circuit Judge (dissenting):

I would affirm the decision of the district court.

Nothing could be clearer than that the issue of arbitrability is to be determined, not by the arbitrator, but by the court.

"The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[1]

"Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by

---

though the arbitrator is explicitly denied authority to make an award of increased wages, unlike the situation here. See United States Plywood Corp. v. Carpenters Local 1521, 68–1 ARB ¶ 8199 (1968).

2. See Space Services of Mississippi, Inc. v. Int'l Ass'n of Machinists, 69–1 ARB

¶ 8141 (1968) (envisioning negotiation by union and company as to wage classification of new job).

1. United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

the Court on the basis of the contract entered into by the parties." [2]

"The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede a judicial determination that the collective bargaining agreement does in fact create such a duty." [3]

It is difficult for me to believe that in deciding the issue of arbitrability the court is not called upon to exercise the same type of judicial function that is involved in any task of construing a contract. There is nothing about an arbitration provision in a collective agreement which should cause a court to abdicate its ordinary responsibility for analysis and interpretation. The position adopted by the majority seems to me to amount to such judicial abdication. The court appears to hold that if a party to a collective agreement claims that the arbitration provision covers a certain subject the court cannot examine the collective agreement to see whether in fact it does so. In the present case the union claims that the recognition clause of the contract requires the arbitration of certain wage rates. If the majority felt free to use ordinary judicial skill in examining the recognition clause, they would find that it quite obviously does nothing of the kind, that it is nothing more than the usual recognition clause defining the bargaining unit.

Presumably the decision herein stands for the proposition that if the union makes its claim without stating that it is governed by the collective agreement (as it originally did in the present case) the court can decide that it is not, but that if the union asserts coverage, then, however obvious it is that there is no coverage, the court *must* hold the issue arbitrable. In the present case the union could just as well have relied on the bulletin board clause or the duration of agreement clause; the recognition clause is no more relevant to the union claim than are those two clauses. However bold the union's impertinence, the court considers itself precluded by the fact that a claim is made from exercising its usual judicial powers.

This result is thought by the majority to be required by United Steelworkers v. American Manufacturing Co., where the Court said that "even frivolous claims" may be arbitrable. The distinction which the majority fails to draw is between a frivolous claim which clearly arises under the contract and is therefore arbitrable and a frivolous claim of arbitrability.[4]

In a case like the present case the collective agreement might provide for fixing higher rates by arbitration for routes which are "markedly dissimilar from those for which rates are fixed herein." The claim of dissimilarity might be frivolous but the claim would still be arbitrable. However, where, as here, there is nothing whatsoever in the collective agreement on which the claim can be based, the assertion of arbitrability is frivolous, and the court, upon so finding, should deny the motion to compel arbitration.

2. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962).

3. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964).

4. "[A]rbitration should be ordered in an action under section 301 whenever the claim might fairly be said to fall within the scope of the collective-bargaining agreement. If the latter contention be made but is patently frivolous, arbitration should be denied." Cox, Reflections Upon Labor Arbitration, 72 Harv.L.Rev. 1482, 1516 (1959).