**GARLICK FUNERAL HOMES, INC., Plaintiff,**

v.

**LOCAL 100, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO, Defendant.**

**No. 75 Civ. 3723(MP).**

United States District Court,
S. D. New York.

May 3, 1976.

---

Burton I. Manis, New York City, for plaintiff, by Burton I. Manis and Richard M. Zaroff, New York City.

William R. Pitassy, Massapequa, N. Y., for defendant.

## OPINION AND FINDINGS

POLLACK, District Judge.

This is the third installment in an already protracted series of legal proceedings to answer the simple question of whether the discharge of four funeral home employees is subject to arbitration.

Plaintiff (hereafter the "Company" or "Garlick"), a corporation operating a number of funeral homes in the New York City area and a member of an employer bargaining unit known as the Metropolitan Funeral Directors Association (hereafter the "MFDA"),[1] seeks an order vacating an arbitrator's award holding that the parties agreed in a retrospective writing to arbitrate the dispute. The Union representing the employees involved has cross-moved for

---

1. The MFDA is authorized by plaintiff, in writing, to represent plaintiff in collective bargaining negotiations with defendant.

an order confirming the arbitrator's award. For the reasons shown, the dispute is not arbitrable and the arbitrator's decision that it is, is vacated and set aside.

The action is brought pursuant to section 10 of the Federal Arbitration Act, 9 U.S.C. § 10, and section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

Defendant (hereafter the "Union") represents funeral home employees in the New York City area including the four terminated employees.[2]

On October 9, 1973 a collective bargaining agreement containing a contract to arbitrate disputes between the members of the MFDA and of the Union expired. Despite negotiations which had been carried on over the previous summer, the parties were not prepared to enter into a new agreement and there followed various forms of labor warfare by both sides, including picketing, job demonstrations, strikes and lock-outs.

At the peak of these actions roughly 60% of the funeral home employees throughout the City were either striking or locked-out, but operations continued at all the homes and the 40% of the employees who continued working were paid according to the terms of the old agreement.

In November of 1973 an MFDA representative notified a Union representative that several Garlick employees would not be reinstated after the labor disputes were settled because of their conduct on the picket lines. The Union made no response.[3] The notice was repeated by the MFDA representative on December 12, 1973 to the Union's president and negotiator.

On December 12, 1973, during the final negotiations on a new agreement, MFDA spokesman presented a three-part stipulation to the Union in which the Union agreed not to discriminate or recriminate against any employees for crossing the picket line and going to work and not to bring any actions against MFDA members for actions growing out of the strike and lockout or the contract negotiations. The MFDA Labor Relations Division agreed, in turn, not to take any action against the Union for acts or conduct growing out of the same events. In presenting the stipulation before final oral agreement on a new contract, the MFDA spokesman again noted that the plaintiff herein was planning to discharge five of its employees (including the four here involved) for their conduct on the picket lines.

The strikes and lock-outs continued until December 13, 1973 when the Union rank and file ratified an oral understanding on a new contract reached by negotiators on both sides.

Promptly after the ratification vote the plaintiff sent letters of discharge to the four former employees mentioned above. The Union also received notification of the discharges.

In late December the Union demanded arbitration of the termination of employment of the four before the American Arbitration Association. Plaintiff challenged the jurisdiction of the AAA on the ground that no arbitration agreement existed between the parties. The Company, in February 1974 countered with a suit in the Eastern District of New York for a declaratory judgment that the discharges were not ar-

---

2. The four employees, John Strobierski, William Zaleski, Joseph Dragone, and Michael Kiley, were all discharged by the Company. Another Garlick employee was laid-off at the same time, but his case is not before the Court.

3. The relevant stipulation on this matter entered into for the purposes of the arbitration states:

    1. In or about November of 1973, during the course of negotiations between the Metropolitan Funeral Directors Association and Local 100, relating to a new collective bargaining agreement and other agreements, Chief Spokesman Alan Gallay advised Local 100 Chief Spokesman Richard O'Keefe that he had been advised by Garlick that certain named individuals had engaged in acts of misconduct and that Garlick did not intend to re-employ these individuals at the close of the strike and lock-out in progress. He further advised that he had been requested by Garlick to communicate this to Local 100. Mr. O'Keefe neither agreed nor disagreed.

bitrable. A preliminary injunction enjoining arbitration proceedings was granted by Chief Judge Mishler on February 28, 1974 on the ground that the parties had not entered into a written agreement to arbitrate the dispute. The order enjoining arbitration of the dispute with the four employees here involved dated March 8, 1974 remains in force and was never vacated by court order or consent of the parties.

Just before the injunction issued and on February 22, 1974 the Union filed charges against the Company with the National Labor Relations Board, alleging that the Company had violated the National Labor Relations Act, §§ 8(a)(1), 8(a)(3), and 8(a)(5), 29 U.S.C. §§ 158(a)(1), 158(a)(3), 158(a)(5), by refusing to reinstate the four discharged employees. On September 4, 1974 an associate general counsel for the N.L.R.B. sent an internal N.L.R.B. memorandum to the Board's Regional Office authorizing that office to dismiss the charges if they were not withdrawn. The charges were withdrawn in September of 1974.

Meanwhile, on May 10, 1974, a formal collective bargaining agreement was finally signed. This contains an arbitration clause and was entitled "Agreement entered into as of midnight October 9th 1973."

Article XV, section 1, the arbitration clause in the new agreement, provides that

[w]henever the representatives of the Union and the Association or their deputies cannot agree upon the adjustment of a grievance, complaint or dispute, the matter shall be referred to the American Arbitration Association for arbitration by an arbitrator appointed by the American Arbitration Association, in accordance with its rules and regulations then prevailing.

The new agreement also contains a broad release clause (Article XXVIII, section 1):

[i]t is specifically understood and agreed that this Agreement constitutes a complete settlement of all matters which have been ·or could have been raised or negotiated by and between the parties for the terms of this Agreement. All demands of either party which were or could have been raised are, except as finally negotiated by this Agreement, in all respects withdrawn, foreclosed and terminated and will not be asserted or reasserted for the term of this Agreement.

Furthermore, the parties also signed the above described three-part stipulation abjuring recriminations.

At the time of the signing of the new agreement, the Company spokesman raised for the third time the discharge dispute with the Union and, according to both the testimony before this Court and a stipulation entered into at the arbitration proceeding, the Union made no response to the Company's assertion that its position on those discharges remained the same despite any language in the new agreement.[4] The Company negotiator testified that he had specifically stated at the signing process that there was to be no arbitration in respect to the termination of the four and that he signed under that understanding.

On August 5, 1974 the Union moved before Chief Judge Mishler to vacate the preliminary injunction he had previously issued. This motion was denied with the following addition;. that:

. . . the preliminary injunction order which enjoins the submission of the dispute concerning the December 14, 1973

---

**4.** "In or about May of 1974, upon the occasion of the execution of the new collective bargaining agreement and other agreements between Local 100 and the Metropolitan Funeral Directors Association at the offices of the former, Mr. Gallay [chief MFDA spokesman] advised Mr. O'Keefe [chief Union spokesman and the Union president] and other representatives of Local 100 that as far as Garlick was concerned, it was their position that nothing in the new collective bargaining agreement and other agreements about to be executed affected Garlick's position on the named individuals [the four discharged employees], and they continued to adhere to their position that they would not reinstate them because of the misconduct. Mr. Galley, [sic] further advised that he was communicating this to Local 100 at the specific request of Garlick. Again there was no affirmative or negative response," according to the stipulation before the arbitrator.

dismissal of the four employees does not prohibit the submission of the dispute concerning the meaning of the contract.

This ruling was adhered to on reargument on September 26, 1974.

The matter was then submitted by the Union for arbitration to Alfred H. Brent, as arbitrator, who construed the release clause as not applicable to the discharge dispute and held that the arbitration clause of the new agreement was applicable to that dispute by reason of the "as of" clause. It is this construction of the agreements of the parties which the plaintiff seeks to set aside.

■ As has been the case in so many actions to compel or enjoin arbitration brought before this and other federal courts, the Court is here called upon to balance two conflicting principles of labor law: the first being the strong presumption in favor of the arbitration of labor disputes, *United Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582–3, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409, 1417 (1960); *Gangemi v. General Electric Co.*, 532 F.2d 861 (2d Cir. 1976); and the second being the bar against requiring a party to arbitrate a dispute he has not agreed to arbitrate, *Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583, 590 (1974); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462, 465 (1962); *Gangemi, supra.*

In accommodating these two principles the Courts have declared that unless a collective bargaining agreement clearly manifests a contrary intent the Court, and not the arbitrator, has the ultimate authority to decide whether or not both parties to the dispute have agreed to arbitrate such disputes. *Operating Engineers v. Flair Builders, Inc.*, 406 U.S. 487, 491, 92 S.Ct. 1710, 1712, 32 L.Ed.2d 248, 252 (1972); *Atkinson, supra; Warrior & Gulf, supra; Gangemi, supra.*

■ While it is true that in reaching his decision the arbitrator discusses contract provisions apart from the arbitration clause, his decision was on arbitrability alone. The Court of Appeals for this Circuit has observed that an arbitrator's decision on his authority to arbitrate is often of substantial aid to a Court considering arbitrability, *F & M Schaefer Brewing Co. v. Local 49*, 420 F.2d 854, 856 (2d Cir. 1970); *Torrington Co. v. Metal Products Workers*, 362 F.2d 677, 680 n.6 (2d Cir. 1966). However, the Court cannot abdicate its ultimate responsibility to determine whether there was in fact an agreement to arbitrate the proffered dispute. In pursuit of that responsibility the Court is naturally led to, and required to consider, all the facts and circumstances illumining the agreements and understandings of the parties.

■ There can be no doubt that the discharge dispute is not arbitrable under the arbitration clause in the expired contract. The continuance of the compensation arrangements in the old contract to a minority of employees who continued to work after that contract expired cannot be translated into an extension of the entire contract to all Garlick employees. *See Procter & Gamble Ind. U. v. Procter & Gamble Mfg. Co.*, 312 F.2d 181 (2d Cir. 1962), *cert. denied*, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963); *Globe Seaways, Inc. v. National Marine Eng. Ben. Ass'n.*, 451 F.2d 1159 (2d Cir. 1971).

There is also no doubt that, if the present agreement applies in its entirety to the period of the questioned discharges, the language of the arbitration clause is broad enough to cover the discharge dispute.

Consequently, the Court must decide whether, given the release clause in the new agreement, the "as of" dating of the new agreement may be interpreted in such a way as to make the arbitration clause applicable to the four discharges.

Both parties have submitted evidence of the bargaining history of this new agreement (including the stipulations) and both negotiators testified before the Court thereon for the purpose of aiding the Court in ascertaining the contractual intent of the parties and the proper interpretation of the "as of" and "release" clauses.

■ It is generally true that where contract language is unambiguous and subject to but one interpretation evidence of bargaining history may not be received to contradict that single meaning. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Strauss v. Silvercup Bakeries, Inc.*, 353 F.2d 555 (2d Cir. 1965); *Cook v. Gristede Brothers*, 359 F.Supp. 906 (S.D.N.Y. 1973). However, evidence of bargaining history becomes admissible where neither of two proffered interpretations is "patently impossible or unreasonable." *Strauss, supra; Sperry Systems Man. Div. of Sperry Div. v. Engineers Union*, 371 F.Supp. 198, 203–4 (S.D.N.Y.1974); *Jennings v. Westinghouse Electric Corp.*, 283 F.Supp. 308 (S.D. N.Y.1968).

■ Given Chief Judge Mishler's injunction, which was in full force and binding on the negotiators and the parties at the time of the signing of the contract (an injunction which remains currently in full force), the Court cannot say that either the Company's or the Union's readings of the "release" and "as of" clauses is impossible or unreasonable. As acknowledged by the Union's attorney, the contract and the dealings between the parties in general over this discharge were "replete with ambiguity." Given the semantic collision of the two clauses outside of the arbitration agreement (the "release" and "as of" clauses) the admission of bargaining history or parol evidence to aid resolution of the ambiguity over the operative date for the application of the arbitration clause is appropriate. *See Procter & Gamble, supra; Globe Seaways, Inc., supra.* It is also necessary to consider the arbitrator's use of the factual stipulations before him in determining the source from which his award draws its essence; i. e., from the agreement or from the negotiating history. *See Warrior & Gulf, supra; Torrington, supra.* In considering this evidence, the Court does not resolve the merits of the dispute over the discharges.

But, the bargaining history aside, the most significant events in the history of this dispute are the injunction itself and the absence of any reference thereto in the new agreement. The parties stipulated before the arbitrator and the Court finds that the Union made no affirmative or negative response to the plaintiff's position (in connection with the signing of the agreement) to the effect that the discharge of the four was not arbitrable, that nothing in the new collective bargaining agreement was to affect plaintiff's position thereon, and that the plaintiff would not reinstate the four because of their misconduct. The defendant executed the new agreement in the face of the plaintiff's declarations and in the light of the undissolved injunction against the arbitrability of those discharges.

■ As already indicated, the arbitrator found that the effective date of the new agreement was "as of" October 9, 1973 and that this bridged the hiatus upon which plaintiff relied in respect to the four. In applying that finding to the arbitration clause, the arbitrator failed to perceive and to give effect to the impact of the injunction order on the arbitrability of the instant dispute. Regardless of whether the award could apply to others, the intent of the parties and the binding injunction precluded any applicability of the arbitrator's award to the discharge of the four.

The contract, made after the injunction issued and while it remained undissolved, must be read in the light thereof. The parties did not vacate or stipulate to set aside the outstanding injunction against review or arbitration of the discharges. Therefore, the new agreement can be construed only to have been written in obedience to the injunction. This practical construction confirms plaintiff's proof and is further borne out by the subsequent effort in August 1974 unsuccessfully made by the defendant to vacate the injunction. The Court finds that the discharge of the four was a matter excluded from the contractual arrangements and that the release clause in the new agreement was intended to and did confirm the exclusion of the four from the contract made in May 1974.

While Chief Judge Mishler sent the issue concerning the meaning of the "release" and "as of" clauses to the arbitrator, he did not vacate the injunction and the arbitrator was not at liberty to ignore the force and application of the injunction in considering the parties' intent in making the new agreement. However, the arbitrator does not take the effect of the injunction into account; his decision evidences no awareness of the relevance and the continuing restraint of the Court order. Without any evidence that the parties intended to provide a writing sufficient to overcome the extant injunction, the arbitrator had no power or competence to rescind the court injunction or to declare the disputes arbitrable.

In view of the Court's ultimate responsibility to determine whether there was an agreement to arbitrate and the scope thereof, and in the light of the contractual intent as found by the Court, the Court holds that the arbitrator's award is not controlling and must be set aside pursuant to the Court's power to vacate awards imperfectly executed or exceeding the arbitrator's powers. 9 U.S.C. § 10.

Accordingly, the motion to vacate the arbitrator's award is granted, and the cross-motion to confirm the award is denied. The discharge of the four is not arbitrable under the actual agreement made by the parties.

The foregoing shall constitute the findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a).

SO ORDERED.