**William M. ARNOLD et al.,**

v.

**The GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., and Warehouse Employees Union Local No. 169.**

Civ. A. No. 77–2221.

United States District Court,
E. D. Pennsylvania.

Oct. 3, 1978.

---

Mead S. Spurio, Philadelphia, Pa., for plaintiffs.

Robert W. Hartland, Pittsburgh, Pa., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Sixteen named plaintiffs bring this action under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) alleging breach of a collective bargaining agreement by defendant Atlantic and Pacific Tea Company and breach of the duty of fair representation by their union, Warehouse Employee Union Local No. 169. A & P has moved for summary judgment on all counts of the plaintiffs' complaint. For the reasons set forth below, A & P's motion is granted in part and denied in part.

The suit arose out of A & P's application of the terms of a multi-employer collective bargaining agreement (the "contract") negotiated between Local 169, of which the plaintiffs are members, and a group of Philadelphia area food store chains, which included A & P. A & P operates three food handling facilities in the Philadelphia area. There is a produce handling facility and a separate grocery handling facility in Yeadon, Pennsylvania, and another produce handling plant in Florence, New Jersey. The work history of the sixteen plaintiffs vary as to details, but all were at one time employees in one of A & P's produce facilities, and all allege the same legal wrongs. First, they allege that A & P violated the contract by laying off the plaintiffs from their produce jobs while employees of the grocery facility with lesser seniority were retained. Second, they allege that A & P violated and is violating the contract by hiring and continuing to hire casual employees in the grocery plant without recalling or reinstating the plaintiff produce employees who are on layoff status.

There are two sections of the collective bargaining agreement in issue. Count I of the complaint alleges that A & P has violated Section 28 of the contract, which says, in pertinent part:

> Straight seniority shall prevail *in each individual warehouse* coming within the provisions of this Agreement, particularly as to layoffs and reemployment. (emphasis supplied)

A & P takes the position that "warehouse", as it is used in Section 28, has a definite and long-accepted meaning. According to A & P, the Yeadon grocery facility is one warehouse and the Yeadon and Florence produce facilities together are a separate warehouse. Under A & P's interpretation, the plaintiff producemen were properly laid off, despite having more time in service with A & P than some grocery employees, because each "warehouse" laid off according to its own seniority list.

The plaintiffs, on the other hand, contend that the three Yeadon and Florence facilities together constitute a single warehouse for purposes of Section 28 seniority rights.[1]

Count II alleges that A & P has violated Schedule F of the contract. Schedule F defines workers' employment rights vis-a-vis temporary workers:

> No casuals will be hired under the terms of Section 5, paragraph d [procedure for hiring casuals] while regular seniority employees are on layoff status.

A & P urges that "regular seniority employees . . . on layoff status", in this context, refers only to employees laid off from either the grocery or produce warehouse (as warehouse is defined by A & P). Under such an interpretation producemen would not be entitled to be hired in grocery in preference to casuals.

---

1. Neither side suggests that each of the three warehouses is a "warehouse".

The plaintiffs interpret Schedule F to mean that all warehousemen are entitled to recall before casuals may be hired in either grocery or produce.

■ In interpreting a collective bargaining agreement it is necessary first to examine the canons of contract construction and second the " 'common law of a particular industry or of a particular plant' ". *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1131 (3d Cir. 1969), quoting *United Steel Workers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 579, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

One rule of contract construction is particularly applicable in the context of a motion for summary judgment:

> Where . . . the meaning of a writing is uncertain or ambiguous, and parol evidence is introduced in aid of its interpretation, the question of its meaning should be left to the jury. *Williston on Contracts,* 3d Ed. § 616.

■ The "common law of the shop" will usually reach the fact finder by parol evidence. Thus, if the language of the collective bargaining agreement is not clear, and must be supplemented by evidence of industrial practice, its meaning becomes a question of fact.[2]

In *International Union of Mine, Mill and Smelter Workers Local 515 v. American Zinc, Lead and Smelting Company,* 311 F.2d 656, 660 (9th Cir. 1963) the Ninth Circuit provided useful guidance for a trial court faced with a motion for summary judgment in a § 301 suit:

> We hold that the district court's ruling . . . was premature and should not have been made on the motions for summary judgment. . . . [I]t is apparent that the meaning of the words . . of the collective bargaining agreement . . . is *not so clear* as to be self-evident; and that accordingly, evidence outside the agreement itself is admissible to show what the parties meant by the

words. What the parties meant by the words is a controlling issue of fact in this case, to be determined in a trial at which the parties may offer evidence in aid of their respective interpretations of the language used. [citations omitted]

The meaning of Section 28 and Schedule F is a controlling question in the instant case. If the meaning is clear, no genuine issue of fact exists; if it is not, summary judgment is inappropriate.

## II

■ The Court concludes that the meaning of Section 28, is not clear and that there is an issue of fact as to its proper interpretation. Three facts revealed by the moving papers compel that conclusion.

First, A & P suggests that a 1974 Supplemental Agreement between Local 169 and A & P conclusively establishes the proper meaning of "seniority . . . in each individual warehouse." That Supplemental Agreement says in part:

> (2). All employees (except maintenance men) in the *Perishable* operations at *Yeadon,* Pennsylvania constitute one separate seniority list.
>
> (3). For purposes of layoffs and job openings . . . all employees . . . in the *Grocery Warehouse* operations at the *Yeadon* and *Florence* warehouses together constitute one separate seniority list. (emphasis supplied)

The difficulty with A & P's suggestion is that, by 1974, A & P operated a grocery facility *and* a produce facility in Yeadon, while there was only a produce plant in Florence. The 1974 Supplemental Agreement *does* separate producemen and grocerymen into different seniority groups, but it does not speak to the current physical division (or even the 1974 physical division) of warehousing functions. As a result, the divergence between the terms of the Supplemental Agreement and what A & P sug-

---

**2.** The language of a collective bargaining agreement can be so clear that extrinsic evidence should not be admitted to aid interpretation. See, *e. g., Hardy v. H. K. Porter Co., Inc.,* 417

F.Supp. 1175 (E.D.Pa.1976); *Garlick Funeral Homes, Inc. v. Local 100 Service Employees International Union AFL–CIO,* 413 F.Supp. 130 (S.D.N.Y.1976).

gests has been its practice, creates rather than eliminates ambiguity as to the meaning of Section 28.[3]

Second, A & P has cast doubt on its own interpretation of "warehouse" in its "Notice of Termination" given to some producemen (including some plaintiffs) on February 6th, 1975.

In that document produce/perishable is listed as a "Department". The wording would perhaps not be significant except that Section 28 discusses "transfers . . . from one department to another within the warehouse." If, as the Notice of Termination might imply, produce is a department for purposes of Section 28, the larger "warehouse" would have to be, as the plaintiffs suggest, all grocerymen and producemen. The Court would perhaps ignore the nomenclature used in the Notice of Termination, but that Notice relates to layoffs—the same subject to which Section 28 applies.

Third, the plaintiffs by affidavit have raised the possibility that A & P's practice has been to recognize the seniority of producemen as to layoff and rehiring *after* their transfer to grocery. The affidavit of Edward T. Burton, an A & P produce employee who is not a plaintiff says in part:

> During the entire period of his [Burton's] employment in the Produce Department [1946–present] A & P has never consistently adhered to a policy of administering and applying seniority separately in the Produce and Grocery Department for purposes of *job layoffs* and transfers . . . A & P has on numerous and repeated occasions allowed employees of one department to move into the other department with their seniority rights and privileges intact. (Burton affidavit at 1–2, emphasis supplied.)

The Court accepts the proposition that the application of a collective bargain-

ing agreement may be used as an aid to its interpretation. *Ludwig Honold Mfg. Co. v. Fletcher,* 275 F.Supp. 776 (E.D.Pa.1967), *rev'd* on other grounds, 405 F.2d 1123 (3rd Cir. 1969). Furthermore, the plaintiffs do not contest that A & P's practice has been to lay off and rehire according to separate grocery and produce lists. Mr. Burton's affidavit merely says that A & P has never *consistently* adhered to that policy. Nevertheless, the Court cannot conclude that the practice is so clear that it confirms A & P's interpretation of Section 28 seniority so as to eliminate any genuine issue of fact as to the meaning of the contract language.[4]

### III

A & P argues that the "language of Schedule F has consistently been interpreted to prohibit the hiring of casual employees for warehousing work only when regular employees from that particular type of warehousing operation are on layoff status . . . For decades there has existed no misunderstanding regarding the interpretation of Schedule F." (A & P Brief at 16.) A & P's argument is somewhat disingenuous inasmuch as the provision contained in Schedule F never appeared in any of the collective bargaining agreements before the one in issue. (Plaintiffs' Brief at 16–17) Even assuming, however, that A & P is correct that there had been a *practice* of hiring casuals in grocery when producemen were laid-off, the meaning of the language is still not clear.

The contract was negotiated between Local 169 and a multiemployer bargaining group. Some of the other signatories (e. g. Food Fair Stores, Acme Markets) apparently maintained a single seniority list for all of their Local 169 Warehousemen, whether grocery or produce. Under the circumstances even if Section 28 seniority is

---

3. From 1964 until May 1973 A & P's warehousing was done in the plants referred to in the Supplemental Agreement, i. e. the Yeadon Grocery Facility, the Yeadon Produce Facility and the Florence Grocery Facility.

4. Of course, nothing in this opinion is intended to deprecate A & P's interpretation of the language of Section 28. The Court also refrains from comment upon the strength of the plaintiffs' interpretation, but notes that the plaintiffs still must prove the correctness of their interpretation at trial.

defined as A & P suggests, the Court would not be persuaded that Schedule F seniority rights were not intended to accrue to *all* of a signatory's Local 169 Warehousemen. A & P is right to suggest that local practice may help to define the terms of a multi-employer pact, but the Court is not willing to accept that there is no issue of fact as to what Schedule F means as it applies to A & P. Where the application of a provision in a labor contract is objected to soon after its first appearance in the agreements between the parties, the language itself, rather than past practice, must serve as a crucial indicator of what the parties wanted. Otherwise, attempts to change the terms of the relationship by means of new provisions would be seriously hampered, since the meaning of the new terms could be clouded by evidence of the very practices that the parties are attempting to change. The language of Schedule F does not lend itself easily to A & P's interpretation, and fact-finding will be required.[5]

### IV

In Count III of their complaint the plaintiffs have alleged that the "practice and policy of the Defendant, A & P . . . in terminating the Plaintiffs herein by means of lay-off [despite Section 28 and Schedule F seniority rights] . . . constitutes an intentional and wrongful discharge of Plaintiffs herein."

In its brief supporting its motion for summary judgment A & P argues that there is no such thing as a cause of action for "wrongful discharge." The Court is inclined to agree, but Count III will be permitted to stand nevertheless.

Section 301(a), upon which the plaintiffs assert jurisdiction, provides that "Suits for violations of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." As is clear from the language of the statute, the plaintiffs' action against A & P must be considered, in essence, an action for breach of contract. In that light, "wrongful discharge" is not a cause of action but is rather a way in which a collective bargaining agreement can be breached or violated. The authorities cited by the parties[6] and others considered by the Court, that use the term wrongful discharge share a common characteristic—all are § 301 suits in which the discharge is argued to be a breach of contract. *Retana v. Apartment, Motel, Hotel and Elevator Operators Union, Local No. 14,* 453 F.2d 1018 (9th Cir. 1972), relied on by the plaintiffs as demonstrating the existence of a wrongful discharge cause of action, is illustrative:

> [T]he complaint alleged three causes of action, two based upon wrongful discharge in violation of the collective bargaining agreement . . . It is conceded that the district court had jurisdiction of the wrongful discharge *causes of action* under § 301(a). *Id.* at 1021 (Emphasis supplied).

The language of Section 301(a) only permits recognition of a "wrongful discharge" claim against an *employer* under the "Suits for violation of contracts . . . ." clause quoted above. Thus it is apparent that the wrongful discharge claim in Count III adds little to the more conventional allegations of breach of the collective bargaining agreement by means of improper lay-offs

---

5. Bargaining history will be admissible to show the meaning of the contract language. See, *e. g. Garlick Funeral Homes v. Local 100 Service Employees, etc., supra,* 413 F.Supp. at 135. The Court recognizes that evidence of bargaining history is uniquely in the defendants' control, but will not for that reason exclude it if it is useful and probative.

6. *Brady v. Trans-World Airlines, Inc.,* 401 F.2d 87 (3d Cir. 1978), *cert. den.,* 393 U.S. 1048, 89

S.Ct. 680, 21 L.Ed.2d 691 *reh. den.,* 394 U.S. 955 (1969); *Local 4076, United Steel Workers v. United Steel Workers,* 338 F.Supp. 1154, 1158 (W.D.Pa.1972); *Davidson v. International U. U. A., A. & A. I. W., Local No. 1189,* 332 F.Supp. 375, 377 (D.N.J.1971); *Retana v. Apartment, Motel, Hotel and Elevator Operators Union, Local No. 14,* 453 F.Supp 1018 (9th Cir. 1972).

which are at the heart of Counts I and II. Furthermore, all three Counts demand precisely the same relief.[7]

 Nevertheless, the Court will not, by treating this part of A & P's motion for summary judgment as a Rule 12(f) motion to strike, order Count III stricken as redundant. In deference to usage (see *Retana v. Apartment, Motel etc., supra*), and for whatever value it may have for purposes of clarifying the plaintiffs' claims, Count III will be permitted to stand.

The Court hastens to note, however, that by permitting the "wrongful discharge" claim to stand it is not recognizing a *tort* of wrongful discharge, or some form of "aggravated breach of contract" under the auspices of § 301.

This Court recently considered a claim sounding in tort for wrongful discharge. *O'Neill v. ARA Services, Inc., et al.,* 457 F.Supp. 182, (E.D.Pa.1978).[8] There is considerable doubt as to whether such a tort exists; moreover this Court is certainly not prepared to engraft such a right of action in tort onto the contract language of § 301(a).

Finally, the plaintiffs' complaint does not specifically ask this Court to exercise pendent jurisdiction over any claims based on state law, and the Court declines to treat Count III as such a request.

### IV

The plaintiffs have not opposed A & P's motion for summary judgment as to Count V and Count VI.[9] Count V alleges that A & P conspired with Local 169 to breach the collective bargaining agreement, and Count VI alleges racial discrimination on the part of A & P and Local 169.

The Court has examined Counts V and VI and agrees that they are without merit and that A & P is entitled to summary judgment thereon.

 The plaintiffs seek thirty thousand dollars ($30,000) in exemplary damages. The law of this circuit is that exemplary (i. e. punitive) damages are not recoverable in a § 301 action. *Local 127, United Shoe Workers v. Brooks Shoe Mfg. Co.,* 298 F.2d 277 (3d Cir. 1962). See also *Deboles v. Trans-World Airlines, Inc.,* 552 F.2d 1005, 1019 (3d Cir. 1977). Accordingly, the Court will dismiss the plaintiffs' claims for exemplary damages on its own motion.

---

7. The plaintiffs demand a single seniority list for all warehouse employees; reinstatement; wages due them during the period of their layoffs; counsel fees; and injunction prohibiting A & P and Local 169 from maintaining any seniority system except that provided for in the contract, and requiring the establishment of seniority lists in conformity with those established by other signatories; reinstatement in Local 169 with back benefits; and exemplary damages.

8. The claim was made under state law, having arrived in this Court under diversity jurisdiction. *See, generally, Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974).

9. Count IV, alleging breach of the duty of fair representation, was directed only against Local 169. Accordingly, it is not a subject of this Order.