**TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA AND VICINITY, et al.,**

v.

**JONES MOTOR COMPANY, INC.**

Civ. A. No. 84–6389.

United States District Court, E.D. Pennsylvania.

Jan. 25, 1990.

Sanford G. Rosenthal of Sagot & Jennings, Philadelphia, Pa., for plaintiffs.

Robert M. Goldich of Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Before me are cross-motions for summary judgment. In this action, union trust funds seek to collect unpaid fringe benefit contributions from an employer. Plaintiffs allege the contributions became due when the defendant paid a number of laid-off employees to compensate them for earned but unused vacation time. After reviewing the collective bargaining agreements at issue, I conclude that the contributions are due from the defendant, and, accordingly, will grant summary judgment in favor of the plaintiffs and against the defendant.

Plaintiffs Teamsters Pension Trust Fund of Philadelphia and Vicinity and Teamsters Health and Welfare Fund of Philadelphia and Vicinity provide retirement and health benefits to eligible participants and their beneficiaries. Employer payments, based on the number of hours each of its employees works, are the source of the funds. Defendant Jones Motor Company, Inc. is an employer that provides over-the-road truck transportation.

The relationship between the parties is governed by a collective bargaining agreement entitled the National Master Freight Agreement and by two supplemental agreements, the Philadelphia and Vicinity Local Cartage Supplemental Agreement ("Philadelphia NMFA") and the Master Agreement between Transport Employers Association and Local No. 161 Transportation Checkers, Receivers and Clerical Workers. Since the two supplemental agreements are substantially the same, I will refer only to the provisions of the Philadelphia NMFA.

In 1981, Jones closed its largest division and over the last four months of that year laid off 2500 employees. At the time each was laid off, Jones paid the employee whatever wages were due and for any accrued but unused vacation time. Although it made contributions to the funds based on the number of hours each employee worked in his last work-week, Jones did not make contributions to the funds based on the number of hours used to compute the vacation pay for each of these employees.

Plaintiffs filed this suit on December 31, 1984, seeking recovery of contributions based on the accrued but unused vacation time for which the laid-off employees were paid in each of the last four months in 1981. By previous orders of March 24 and October 16, 1987, I dismissed as time-barred the claims for contributions for September, October, and November, 1981. However, there remains a timely-filed claim for contributions for the vacation hours of the nine employees given their vacation pay in December, 1981.

My first task is to determine whether as a matter of law the collective bargaining agreements at issue here are clear or ambiguous. *Mellon Bank, N.A. v. Aetna Business Credit*, 619 F.2d 1001, 1011 (3d Cir.1980). If the agreements are clear in their meaning and effect, resolution of this case by summary judgment is appropriate. *Arnold v. Great Atlantic & Pacific Tea Co., Inc.*, 461 F.Supp. 425 (E.D.Pa.1978). In this circuit, the judge must "consider the words of the contract, the alternative meanings suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." *Mellon Bank*, 619 F.2d at 1011. After following this directive, I conclude that the agreements are clear in their meaning and effect. Contributions are due from Jones.

Article 53 (Vacations) and Article 55 (Health and Welfare and Life Insurance) of the Philadelphia NMFA are dispositive.

In pertinent part, Article 53 states:

Section 1. Every regular employee ... shall ... receive [a] paid vacation ...

Section 2. (a) ...

(b) ... Upon permanent layoff ... an employee ... shall be entitled to vacation pay on a pro rata basis ...

Section 4. (a) Vacation pay shall be paid to the eligible employee before he starts his vacation.

(b) Employees shall be paid forty-five (45) straight time hours for each week of vacation for which they qualify.

The pertinent portion of Article 55 states:

Section 1. The Employer will contribute to the Health and Welfare Fund in the manner described in the Sections below....

Section 4. (a) Contributions to the Fund ... shall be made for each seniority employee for each day worked, or if not worked, paid for pursuant to the terms of this Agreement covering ... Vacations ... to a maximum of eight (8) hours per day or forty (40) hours per week.

When these two sections are read together, it is apparent that each employee is entitled to a vacation, and before he takes it, is entitled to his vacation pay. If permanently laid-off, he is entitled to a pro rata share of his accrued vacation pay. Although the amount of an employee's vacation pay for one week is based on his straight time pay for forty-five hours, contributions to the funds are computed on the basis of a forty hour week.

Jones contends that since it has already contributed to the funds on the basis of the employees' ordinary forty-hour work-week, no additional contributions are due for the in-lieu-of vacation payments it made; i.e.,

that the maximum contribution it need pay for any one week is limited to what it must pay for forty hours. I disagree.

Needless to say, there is no contractual provision that clearly states that the employer is never responsible in any single week for a total payment to the funds that will exceed a forty-hour contribution. To read such a limitation into Article 55 strains logic and tortures the rather obvious intent of the contract language. The only reasonable interpretation of the forty-hour limitation of Article 55 is that no matter how many hours a week an employee works and even though vacation pay is figured on the basis of a forty-five-hour work-week, contributions for neither will exceed those for a forty-hour week. The forty-hour provision does not limit the total payment that must be made for any one week, but only fixes how those contributions are to be computed when overtime or vacation pay is involved.

If Jones' forty-hour limitation argument was accepted, it would mean that although the contract specifically contemplates contributions to the funds based on vacation hours, payments would be called for only in such unusual circumstances that they would rarely be made.[1] Surely if the parties had intended to restrict contributions to the exception rather than to the rule, they would have made specific provision to do so.

Jones has a second argument to avoid payment. It contends that contributions to the funds for an employee's "vacation time" must only be made if in fact the employee goes on vacation, that is, does not work. Just how an employee can take a vacation (i.e., not work temporarily) after he has been permanently laid-off (so he is not working at all) is not explained. How-

ever, the logical result of Jones' illogical argument would be that the laid-off employee was not entitled to any vacation pay either. If the funds are entitled to their contributions for a laid-off employee's vacation time only if he does not work, it would follow that he is not entitled to his vacation time pay only if he does not work. However, since Section 2(b) of Article 53, provides he is to be paid for his accrued vacation time when laid-off, it follows that a contribution to the funds must also be paid.

I conclude that the only logical reading of Articles 53 and 55 is that Jones shall contribute to the funds for vacation pay regardless of when the employee received that pay.

The funds seek additional recovery from Jones in the form of interest on the unpaid contributions, attorney's fees, costs, and liquidated damages. The Funds request that Jones pay double interest, pursuant to 29 U.S.C. § 1132(g)(2)(B) and (C)(i), from the date the contributions were due until the date such money is eventually paid. Since Jones has not objected to this claim, I will grant this relief. The applicable interest rate should be determined under 26 U.S.C. § 6621(a)(2) and (b). Jones is also liable for the funds' attorney's fees and costs under section 1132(g)(2)(D) or under the agreements in Articles 55 and 56, Section 8 of the Philadelphia NMFA. These sections also provide for a ten percent enhancement on the total unpaid contributions as liquidated damages. Section § 1132(g)(2)(C) mandates that I award liquidated damages provided for in the collective bargaining agreement. Despite the contractual provision to the contrary, the funds argue that an award of liquidated damages in the amount of twenty-five percent of the unpaid contribution, the maximum allowable under Pennsylvania law, 43 P.S. § 260.10, is warranted by the circum-

---

1. If the forty-hour limitation urged by Jones applies, there are only four scenarios when a contribution would have to be made for an employee's vacation time:

(1) Despite Section 4(a) of Article 53 calling for vacation pay before a vacation starts, an employee was paid his vacation pay while on vacation or upon return from vacation. In neither of these circumstances would contributions exceed forty-hours for a particular week.

(2) If an employee failed to work at all in week number one, or worked less than forty hours in week number one, and went on vacation in week number three for which he was paid in week number two, the funds would be entitled to payment for the difference between Jones' claimed maximum of forty hours and the time the employee actually worked.

stances. However, because the parties have reduced their agreement on liquidated damages to writing, I will enforce that provision instead of looking outside the contract for guidance. An order follows.

## ORDER

AND NOW, this 25th day of January, 1990, it is hereby ordered that plaintiffs' motion for summary judgment is granted, and defendant's motion for summary judgment is denied. It is further ordered that:

1. Defendant pay to plaintiffs contributions based upon the accrued but unused vacation time for which defendant made vacation payments in December, 1981, to nine laid-off employees. The contributions shall be paid to plaintiffs on the basis of forty hours for each week of vacation pay and in accordance with all other applicable provisions of the collective bargaining agreements.

2. Defendant pay to plaintiffs double interest, as calculated pursuant to 26 U.S.C. § 6621(a)(2) and (b), on the total amount of unpaid contributions. Interest shall run from January 28, 1982 to the date of entry of this order.

3. Defendant pay plaintiffs' costs, expenses, and attorney's fees associated with this litigation.

4. Defendant pay liquidated damages to plaintiffs in an amount equal to ten percent of the total unpaid contributions.

5. Plaintiffs and defendant stipulate to the amount of contributions, contractual liquidated damages, interest, costs, expenses, and attorney's fees owed by defendant to plaintiffs by February 16, 1990. If the parties are unable to reach a stipulation by February 16, 1990, each party shall submit to the court on that day a certification itemizing its proposed calculations for the amount owed to plaintiffs by defendant. Any objections to the other party's certification must be filed on or before February 23, 1990.

6. Defendant pay plaintiffs the amount owed, as calculated by stipulation or by court order, no more than thirty days following the entry of the stipulation or court order.