**AMERICAN BROADCASTING COMPANIES, INC., Plaintiff,**

v.

**AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS et al., Defendants.**

**No. 76 CIV. 483 (MP).**

United States District Court, S. D. New York.

April 30, 1976.

---

Graubard, Moskovitz, McGoldrick, Dannett & Horowitz, New York City, by Emanuel Dannett, Robert M. Schanzer, and Michael W. Sculnick, New York City, for plaintiff.

Murtha, Cafferky, Powers & Jordan, Washington, D. C., by Daniel B. Jordan, and

Thomas P. Powers, Washington, D. C., for defendants.

## OPINION AND FINDINGS

POLLACK, District Judge.

Plaintiff, American Broadcasting Companies, Inc. (ABC hereafter) sues to enjoin AFTRA Washington-Baltimore Local (the Local hereafter) and the American Arbitration Association (AAA hereafter) from proceeding with an attempted arbitration sought by the Local of a dispute concerning the termination of the employment of Charles R. Hughes, a Washington staff announcer of ABC and a member of the Local.[1] The Local counterclaims for a decree compelling the arbitration sought.

Jurisdiction is based on Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and 28 U.S.C. §§ 1331, 1337, 2201, *et seq.* The counterclaim seeks an order compelling arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4.

Pursuant to Rule 65(a)(2), Fed.R.Civ.P., and with the consent of the parties, the Court ordered that the trial of the action on the merits be advanced and consolidated with the hearing of the plaintiff's application for preliminary relief.

For the reason that the parties made no agreement, oral or in writing, to arbitrate any dispute pertaining to the employment of Mr. Hughes, the injunction sought by plaintiff must be granted and the Local's counterclaim dismissed. The facts follow.

The plaintiff, ABC, is a New York corporation engaged in the radio and television broadcasting business throughout the United States.

The former defendant, American Federation and Radio Artists (the International), is an international labor union representing employees in the broadcasting industry. It has been a party to a number of collective bargaining agreements with ABC covering staff announcers performing services in the City of New York. The current agreement between ABC and the International is dated September 22, 1974 (the 1973–76 New York Staff Announcers' Agreement).

The Local is an affiliate of the International having its principal place of business in Washington, D. C. It is an unincorporated association representing employees in an industry affecting commerce within the meaning of the Labor Management Relations Act of 1947 as amended, 29 U.S.C. § 185.

Charles R. Hughes was employed by ABC as a Washington staff announcer from February 4, 1963 until February 7, 1975 when he was laid off. He was not and has never been employed by ABC as a New York staff announcer. There is no collective bargaining agreement between ABC and the Washington Local and it is not a party to the collective bargaining agreement between the International and ABC relating to New York staff announcers. The terms of employment of Hughes were agreed to from time to time between the vice-president of ABC and Evelyn Freyman, business agent for the Washington Local. Under those terms, subsequent to May 9, 1968 Hughes was to receive the base salary, salary guaranty, vacation, holiday, sick leave, severance and pension benefits set forth in each New York staff announcers' agreement.

Although the 1973–1976 New York Staff Announcers' Agreement provides for arbitration

> (b) On the request of either AFTRA [the International] or the Company, [of] any controversy or dispute between a staff announcer who is a member of AFTRA and the Company arising out of or connected with his contract or the employment by the Company of a member pursuant hereto, . . .

the parties at no time agreed orally or in writing that the arbitration provision would

---

1. On March 3, 1976 on stipulation of the parties, American Federation of Television and Radio Artists also named as a defendant (International hereafter) was dismissed from the suit, without prejudice.

become part of the Hughes employment agreement.

The 1973–1976 New York Staff Announcers' Agreement contains the following limitations:

1. This agreement applies, and is limited in its application, to staff announcers employed by the New York office of the Company as of the date of this agreement, . . . .

The Company agrees that the limitation of the scope of this agreement to announcers in New York City is without prejudice to any claim by AFTRA hereafter asserted against the Company or others to the effect that the bargaining unit be wider in scope or larger in extent, but no such claim shall affect the validity of this agreement.[2]

Subsequent to the termination of Hughes' employment, he wrote to the National Executive Secretary of the International under date of January 28, 1975 claiming that "I was guaranteed my job 'til age 65 on the same basis as my New York brethren. She [Freyman] said the side letter between AFTRA and ABC covers me on that."

The side letter to which Hughes had reference is in fact two letters, one supplementing the New York Staff Announcers' Agreement of 1971–1973 and the other the 1973–1976 New York Staff Announcers' Agreement. Those letters contain the "attrition" clause under which ABC agreed that it would continue

to employ each such regular staff announcer who was on the staff on November 15, 1969 until each such announcer may die, resign, be permanently incapacitated, transfer voluntarily out of the staff announcer bargaining unit, retire or be retired, or be discharged for just cause.

2. There is no evidence that this provision was made applicable to Hughes by any AFTRA request that the bargaining unit be widened.

3. Only a party empowered to seek arbitration under the arbitration clause may seek it. *See*

Attached to each of those letters was a list of the announcers—all New York staff announcers—to whom it applied. Hughes' name was not included in either of those lists.

■ On November 3, 1975 the Local (not the International—the party to the arbitration agreement)[3] demanded "arbitration of the termination by ABC of Charles R. Hughes as being a breach of the collective bargaining agreement existing between the parties" viz., the 1973–1976 New York Staff Announcers' Agreement. AAA informed ABC that it would proceed with arbitration unless enjoined by Court.

ABC promptly sued for an injunction of the demanded arbitration.

The history of the employment agreements relating to Hughes is instructive. In June 1964, Richard Freund, a vice president of ABC, held conversations with Mrs. Freyman who was then business agent for the Washington Local, concerning the terms and conditions of Hughes' employment. An agreement was reached retroactive to November 16, 1963 to the effect that Hughes was to receive the same base salary and earnings guarantee applicable to staff announcers employed by ABC in New York. Thereafter and some time prior to May 8, 1968 Freund and Mrs. Freyman had a further conversation concerning the terms of Hughes' employment in which it was agreed that Hughes would receive the base salary, salary guarantee, vacations, holidays, sick leave and severance provisions contained in the 1966–69 New York AFTRA agreement between AFTRA and ABC covering New York Staff Announcers and would be covered by AFTRA's Pension Plan. It was clearly understood that except for the items listed, Hughes was not covered by any of the other terms of that New York agreement. This was the oral understanding, confirmed by letter dated

*Local 12404, District 50, UMW v. Martin Marietta Corp.,* 328 F.2d 945 (7th Cir. 1964), *cert. denied,* 379 U.S. 880, 85 S.Ct. 147, 13 L.Ed.2d 87 (1965).

May 9, 1968. The letter gives no indication that an agreement to arbitrate disputes concerning Hughes had been adverted to, discussed or arrived at. On or about November 13, 1970, another confirmation from Freund of the understandings concerning the terms and conditions of the employment of Hughes referred to the basic salary and earnings guarantee applicable to New York staff announcers. In that confirmation no mention was made that any other terms of the New York agreement would inure to Hughes' benefit.

Freund states "at no time did I agree that the arbitration provisions of the 1969–72 New York AFTRA Agreement would be applicable to Hughes, nor did I agree to limit ABC's right to lay off Hughes." He further states that Freyman at no time requested that the arbitration provisions of any New York AFTRA Agreement be made applicable to Hughes and that he never was asked to agree nor was it ever agreed that the "attrition principle" which covered New York staff announcers would also apply to Hughes. Mrs. Freyman does not dispute Freund's statement.

Upon expiration of the 1969–72 New York AFTRA Agreement a new collective bargaining agreement covering New York staff announcers was made between AFTRA and ABC dated September 22, 1974, referred to above as the 1973–76 New York AFTRA Agreement. A letter agreement dated November 16, 1973 supplemented that agreement continuing the attrition principle and once again listing by name the staff announcers to whom it applied, which list did not contain the name of Hughes as one of the announcers to whom it applied. Mrs. Freyman in discussing the 1964 meeting confirms Freund's statement that "we never agreed that any other terms of the New York Agreement were to be deemed applicable" to Hughes, "given the fact that at that time the issue was never discussed by us". No claim is made by Mrs. Freyman that there was any change in any of the subsequent meetings with Mr. Freund. She further acknowledges that the inclusion of a provision that Hughes' employment would be subject to arbitration was never discussed. Her only statement in these regards is that "it was my assumption that the inclusion of such a provision, which was never discussed, was unnecessary, since I have never known of any contractual situation under AFTRA where the performer was not covered by arbitration". Suffice it to say, that assumption or oversight do not spell agreement.

Thus, it is clear beyond peradventure of doubt that at no time did ABC or any of its representatives actually agree either orally or in writing, nor may an inference be drawn from the conduct of the parties, that any disputes with Hughes would be arbitrated.

I.

The Norris LaGuardia Act, 29 U.S.C. § 101 *et seq.,* does not preclude the consideration of equitable relief of the sort claimed here in the nature of an injunction.

Rule 65 Fed.R.Civ.P. governs the granting of injunctive relief by district courts and contains a provision (subsection [e]) which declares that the Rule does "not modify any statute of the United States relating to temporary restraining orders and preliminary injunctions in actions affecting employer and employee." The Norris LaGuardia Act, 29 U.S.C. § 101, provides that

> No court of the United States . . . shall have jurisdiction to issue any . . . temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such . . . temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

The "public policy" referred to in this section and delineated in the following section of the Act involves the objective that employees be free to associate with their fellow employees and designate labor representatives. That policy would in no way be impeded by the issuance of an injunction in this case. Additionally, the subject matter

of this case does not fall within the specific areas set out in Section 4 of the Norris LaGuardia Act, 29 U.S.C. § 104, in which a district court is strictly forbidden from issuing injunctive relief. It is clear that the intent of the draftsman of these statutes was to curtail the use of injunctions against concerted labor activity, not the use of injunctions against the improper invocation of the arbitration process. As noted in a case in which the Supreme Court ordered arbitration,

> the core purpose of the Norris-LaGuardia Act is not sacrificed by the limited use of equitable remedies to further this important policy [the peaceful resolution of labor disputes], and consequently . . . the Norris-LaGuardia Act does not bar the granting of injunctive relief in the circumstances of the instant case. *Boys Markets, Inc. v. Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

■ Accordingly, there is no doubt of the Court's subject matter jurisdiction to consider the application before it for injunctive relief. The Courts have been given the power to decide whether parties have chosen to submit their disputes to arbitration, *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462, 465 (1962); *Gangemi v. General Electric Co.,* 532 F.2d 861 (2d Cir. 1976). The concomitant of the power to enforce is to enjoin arbitration where an agreement therefor is absent. *See, District 2, Marine Engineers Beneficial Association v. Falcon Carriers, Inc.,* 374 F.Supp. 1342 (S.D.N.Y. 1974); *Garlick Funeral Homes v. Local 100,* 85 LRRM 2749 (E.D.N.Y.1974); *Colonie Hill, Ltd. v. Local 164, Bartenders, H. & R. Emp. U.,* 343 F.Supp. 986 (E.D.N.Y.1972); *Playboy Clubs International, Inc. v. Hotel & Restaurant & Bartenders International Union,* 321 F.Supp. 704 (S.D.N.Y.1971).

II.

The Supreme Court has made it absolutely clear that the arbitration of labor disputes

> is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1321, 8 L.Ed.2d 462, 466 (1962), *quoting, United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960).

In a more recent opinion the Court reaffirmed this basic principle of labor law, declaring that

> [n]o obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so. *Gateway Coal Co. v. Mine Workers,* 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583, 590 (1974).

Noting both these authorities, the Court of Appeals for this Circuit in *Gangemi v. General Electric Co.,* 532 F.2d 861 (2d Cir. 1976) observed that the rule of law they articulate is, in turn, the basis for

> the well established principle of federal law that unless a collective bargaining agreement clearly manifests a contrary intent, it is for the courts, not the arbitrator, to decide whether the parties to that agreement have agreed to submit specific disputes to arbitration. *Operating Engineers v. Flair Builders, Inc.,* 406 U.S. 487, 491, 92 S.Ct. 1710, 1712, 32 L.Ed.2d 248, 252 (1972); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462, 465 (1962); *John Wiley & Sons v. Livingston,* 376 U.S. 543, 546–7, 84 S.Ct. 909, 912, 11 L.Ed.2d 898, 902, 903(1964); *United Steelworkers v. Warrior & Gulf Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).[4]

---

**4.** It is not clear to what extent this "well established principle" affects the Second Circuit's previous observation that "the question of the arbitrator's authority to make a particular award was best left to the arbitrator initially, so that the court could receive 'the benefit of the arbitrator's interpretative skills as to . . . his contractual authority,'" *F & M Schaefer*

The *Gangemi* Court went on to note the countervailing national policy in favor of the arbitration of labor disputes, see 29 U.S.C. §§ 171(a), 173(d), and the presumption that a broad arbitration clause applies to a dispute "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. . . . *United Steelworkers v. Warrior & Gulf Co.,* 363 U.S. 574, 582–3, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960).

It is true that the New York agreement between the parties contains what may be called a broad arbitration clause. However, it also contains an express limitation of its scope "to staff announcers employed by the New York office".

The evidence establishes that Hughes was not "employed by the New York Office" within the meaning of this latter provision. While some of the paperwork involving his employment (such as the work on the television and radio talent payments) was handled by ABC's central office in New York, Hughes was employed exclusively for and in the Washington office as made clear by the exhibits showing that his base salary and the extra payments required under the earnings guarantee were paid by the Washington office.

■ Consequently, Mr. Hughes was, by an express provision of the New York agreement, left outside its general scope. He was not a "staff announcer" within the meaning of that term in the agreement, nor was Hughes employed "pursuant [t]hereto", which was the *sine qua non* for arbitration expressed in the agreement. Absent evidence that Freund and Mrs. Freyman actually agreed to incorporate the New York arbitration provision into the Hughes contract or that ABC at least bound itself to that writing through some course of conduct with respect to Hughes, the Court cannot force ABC to arbitration. The

strong presumption in favor of arbitrating labor disputes does not require this Court to presume the very existence of an applicable arbitration clause where no evidence of any such clause, save a few unilateral assumptions by those seeking arbitration, exists.

The authorities in this Circuit teach that arbitration clauses may not be broadened in application or incorporated into separate agreements by implication alone. *Globe Seaways, Inc. v. National Marine Engineers' Beneficial Association,* 451 F.2d 1159 (2d Cir. 1971); *Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co.,* 312 F.2d 181 (2d Cir. 1962), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963); *District 2, Marine Engineers Beneficial Association v. Falcon Carriers, Inc.,* 374 F.Supp. 1342 (S.D.N.Y.1974).

■ In *Globe Seaways* and *Procter & Gamble* the Court of Appeals refused to extend the temporal application of arbitration clauses in agreements that had expired by the time the disputes in each case arose. In both cases the employer had, by a course of conduct, extended certain working condition provisions beyond the life of the agreement and in both cases the Court noted that

[t]he fact that the employer chose thereafter not to change many of the working conditions which had prevailed under the expired agreement does not tend in any way to establish that that agreement was, or was considered to be, or was treated as still effective. *Globe Seaways, supra,* at 1163, *quoting, Procter & Gamble, supra,* at 184.

Similarly, the fact that ABC chose to apply to Hughes certain working conditions then prevailing under the New York agreement does not establish that the New York agreement as a whole applied to Hughes.

In *Marine 2, supra,* the District Court concluded that an alleged oral "side agreement" was not subject to an arbitration provision contained in a separate written

*Brewing Co. v. Local 49,* 420 F.2d 854, 856 (2d Cir. 1970), *quoting, Torrington Co., v. Metal Products Workers,* 362 F.2d 677, 680 n.6 (2d Cir. 1966). However, whatever the current

force of this latter observation, there is no doubt that the ultimate authority to determine if any arbitration agreement was made at all is vested in the Court.

agreement between the parties. Here, as in *Marine 2* (at 1347), it is clear that the Hughes agreement was "a separate contractual undertaking between the parties and any dispute concerning its existence and effect cannot be said to be" within the language of the written arbitration clause.

The Local's case for the application of the New York arbitration clause to Hughes is even weaker than that presented by the unions in the three above-discussed cases. Here the New York agreement *expressly* limits its application to New York announcers.

■■■ The case law indicates that an arbitration agreement need not be signed and it is sufficient that the parties by act or conduct commit themselves to it. *A/S Custodia v. Lessin International, Inc.,* 503 F.2d 318 (2d Cir. 1974); *Starkman v. Seroussi,* 377 F.Supp. 518 (S.D.N.Y.1974); *Ocean Industries, Inc. v. Soros Associates International, Inc.,* 328 F.Supp. 944 (S.D.N.Y.1971). However there must be a writing to which conduct may attach. Given the express limitation of the written arbitration clause here to New York staff announcers, the Local has no writing on which to base its demand for arbitration. The Federal Arbitration Act, 9 U.S.C. § 4, which provides for an action in federal court to compel arbitration, requires that an arbitration agreement be in writing. The law in this Circuit is clear that, unless the union or employer is engaged in the transportation industries, the Federal Arbitration Act applies to its demand for labor arbitration. *International Association of Machinists and Aerospace Workers v. General Electric Company,* 406 F.2d 1046, 1049–50 (2d Cir. 1969); *Signal-Stat Corp. v. Local 475,* 235 F.2d 298, 302 (2d Cir. 1956), *cert. denied,* 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957); *MaKress Lingerie, Inc. v. International Ladies G.W.U.,* 395 F.Supp. 110, 115 (S.D.N.Y. 1975); *Garlick Funeral Homes v. Local 100,* 85 LRRM 2749 (E.D.N.Y.1974). The requirement that arbitration clauses be in writing is embodied in nearly all arbitration statutes. *See* N.Y. CPLR § 7501; Domke, *The Law and Practice of Commercial Arbitration,* § 6.01 at 46 (1968).[5]

■■■ The Court finds with the requisite positive assurance consistent with Mrs. Freyman's admissions that (i) there was no agreement to arbitrate as of 1964, (ii) ABC did not thereafter, either in written or spoken words or by conduct, actually agree nor was it understood by the Local or Hughes to have agreed to arbitrate any dispute with Hughes nor, (iii) was ABC asked to so agree. There was no independent agreement to arbitrate and there was no incorporation by reference of the New York arbitration agreement in the employment arrangements with Hughes.

There being no adequate remedy at law, the balance of equities having been shown to favor plaintiff and the plaintiff having succeeded on the merits, the injunction against the arbitration of the Hughes discharge is granted and defendants' counterclaim to compel arbitration is dismissed.

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a) Fed.R.Civ.P.

Submit decree conforming with Rule 65 Fed.R.Civ.P. for the consideration of the Court.

SO ORDERED.

---

**5.** The Local cites *Stereotypers v. Long Island Daily Press Publishing Company, Inc.,* 79 LRRM 2284 (E.D.N.Y.1971), as a case in which the Court enforced an arbitration clause that had not been "reduced to writing." In that case, Judge Dooling noted that, while the final form of the agreement had not been "reduced" from the minutes of the negotiating session to a formal writing, there were letters between the parties that would suffice.