Application of UNITED ARTISTS EASTERN THEATRES, INC., Petitioner,

v.

LOCAL 640, INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF the UNITED STATES AND CANADA, AFL–CIO, by George Platt, its President, Respondent.

No. 78 C 1817.

United States District Court, E. D. New York.

Feb. 22, 1979.

Proskauer, Rose, Goetz & Mendelsohn, New York City by Alexander Gigante, Jr., New York City, for petitioner.

Vladeck, Elias, Vladeck, Zimny & Engelhard, New York City by Sheldon Engelhard, New York City, for respondent.

MEMORANDUM AND ORDER

NEAHER, District Judge.

This action arises out of a labor dispute between petitioner, United Artists Eastern Theatres, Inc. ("UA"), and Local 640, International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, AFL–CIO ("the Union"). The Union sought to arbitrate the dispute but UA originally petitioned the State court to stay arbitration on the ground that there was no agreement to arbitrate the dispute in question. The action was then removed to this court by the Union and is before the court on UA's renewed application to stay arbitration proceedings.

There is no question that prior to May 1978 UA and the Union were parties to a collective bargaining agreement which contained the following provision:

"*TENTH* : If any dispute shall arise out of or under this agreement, either party may submit such dispute to labor arbitration, in accordance with the voluntary Labor Arbitration Rules of the American Arbitration Association."

The agreement, which was effective through May 1978, provided for the terms and conditions of employment of projectionists in UA motion picture theatres.

The present dispute apparently stems from technological advances in the state of the motion picture art. UA informed the Union in May 1978 that its Manhasset Theatre would be converted into a "triplex" theatre, *i. e.,* three smaller theatres each featuring a different motion picture. In such theatres the single manually operated projection system is replaced by an automated system capable of projecting different films in the three theatres. On May 5, 1978, two of the three theatres opened. Since these changes radically altered the work to be performed by the projectionist at the former Manhasset Theatre, the parties undertook negotiations to resolve certain differences, although the precise subject of these negotiations is now in dispute. The Union asserts the issues were the "terms and conditions of employment of the *projectionists* who were to operate" the automated equipment at the triplex theatres (our emphasis); UA contends the issues were "manning requirements and the rate of pay."

On May 17, 1978, the UA projectionists went on strike as part of a nationwide strike called by Local 640's parent union, and on May 26, 1978, the parent union entered into a stipulation ending the strike, which became part of the local collective bargaining agreements. Paragraph 4 of the stipulation provides:

"During the life of the existing local agreements, the IA [parent union] and its locals shall meet with UA East within the term of said agreements for the purpose of reaching an understanding prior to the expiration of said agreements with respect to the terms and conditions that will apply to 'automated projection booths' (as that term is presently understood and implemented in the state of the art). In the event an understanding is reached with respect to such terms and conditions, said terms and conditions shall be in effect immediately and shall continue in effect for the remainder of the term of said agreements and any renewals thereof."

The terms and conditions of employment in "automated" theatres were thus expressly made subject to further collective bargaining during the term of the existing local agreement.

On or about July 20, 1978, UA allegedly "locked out" a Union projectionist who had appeared to operate one of the booths at the Manhasset triplex theatre and used a non-bargaining unit person in his place. A few days later, the Union, invoking the "current collective bargaining agreement," served a demand to arbitrate the allegedly wrongful lockout and use of non-bargaining unit personnel. UA responded to that demand with the proceedings now removed to this court, which seek a permanent stay of arbitration and a declaration that the demand for arbitration is invalid since there is no agreement to arbitrate terms and conditions applicable to automated projection systems.[1]

The Union insists that on or about May 10, 1978, prior to the national strike, it did reach an agreement with UA on the issues under negotiation, which was approved on the same day by its Executive Board. It further claims it notified UA and stated that the approval was "tantamount to ratification by the General Membership," which would be forthcoming at its September 1978

---

1. Jurisdiction on removal is based on Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and 28 U.S.C. § 1337.

meeting, and that UA immediately implemented the amended collective bargaining agreement. For its part, UA absolutely disputes the Union's version and contends that the agreement was tentative and subject to approval of each side's executive authorities before a binding written agreement could be executed. UA further alleges the agreement was never implemented and that, to date, only one projectionist has been employed, not two as demanded by the Union. Finally, UA argues that it has merely engaged thus far in good faith negotiations to resolve the differences.

In any event, it is clear that the parties did engage in active negotiations. But the critical question is whether any agreement was reached which could be the subject of arbitration under paragraph "TENTH" quoted above. For the following reasons the court believes not and grants UA's application for a stay of arbitration.

■ This court unquestionably has the power under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.*, to prevent submission of an issue to arbitration. See *Black-Clawson, Inc. v. International Association of Machinists*, 313 F.2d 179 (2 Cir. 1962); *District 2, Marine Engineers Beneficial Association v. Falcon Carriers, Inc.*, 374 F.Supp. 1342 (S.D.N.Y. 1974); *A.B.C., Inc. v. American Federation of Television & Radio Artists*, 412 F.Supp. 1077 (S.D.N.Y.1976) and cases cited at 1082. In concluding that no arbitrable controversy has been presented, the court is guided by the *Steelworkers* trilogy, *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), in which it was established that the court's function in the circumstances here presented is to ascertain whether the party seeking arbitration is making a claim which is on its face governed by the contract, with doubts to be resolved in favor of arbitration. Thus, the court must determine whether the parties have agreed to arbitrate and what issues are included in that agreement. *District 2, supra* at 1346. The standard governing this latter determination is whether it can be said with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co., supra* at 582–83, 80 S.Ct. at 1353.

Although the Union sought to submit issues of improper lockout and use of non-bargaining unit personnel to arbitration, it is clear this would be proper only if UA had agreed to do so. See *Bressette v. International Talc Co., Inc.*, 527 F.2d 211, 214 (2 Cir. 1975). In this instance, however, the Union has placed the cart before the horse in characterizing the issue in dispute in this manner. Rather, it is evident that the issue over which there is disagreement is whether the parties did in fact finally agree upon terms for "automated projection booths" to be added to the local collective bargaining agreement subject to the arbitration clause. The court is persuaded, and concludes with positive assurance, that the parties did not reach such an agreement. There is, moreover, simply no way in which the court could construe the existing contract to compel sending the issue of *existence* of the alleged agreement to arbitration for decision. See *District 2, supra* at 1347. *Cf. American Broadcasting Companies, Inc. v. Ali*, 434 F.Supp. 1108, 1111 (S.D.N.Y.1977).

■ The parties were undisputably engaged in some stage of collective bargaining over the issues of manning automated projection booths. This conclusion is supported by the stipulation settling the national strike, which expressly reserved the right to continue negotiation with respect to terms and conditions to apply to "automated projection booths." There is no provision in the stipulation providing for arbitration in the event of a breakdown of the negotiation process, even though express provision is made incorporating into the existing local agreements any understanding the parties may reach. Thus, the stipula-

tion appears to *exclude* these issues from the operation of the arbitration clause; only in the event of actual *agreement* would disputes with respect thereto be arbitrable. The stipulation, moreover, merely suggests an obligation on the parties to negotiate in good faith, for breach of which a charge of unfair labor practice would be appropriate, see *Metromedia, Inc., KMBC–TV v. N.L.R.B.*, 586 F.2d 1182, 1187–88 (8 Cir. 1978), rather than an obligation to arbitrate disputes arising from the issues of manning and terms of employment of the agreed-upon projectionists.

The Union's contention that, even if no contract were formed, the issues are arbitrable because they arise out of the earlier contract is wholly without merit. As stated above, negotiation was undertaken, and subsequently reserved, on the issues of manning and compensation to meet radically changed conditions. The existence of a contract covering the terms and conditions of then-employed projectionists hardly suggests that the parties expected to be bound by it with respect to such changed circumstances, or subject to its arbitration provision if negotiations were unsuccessful.

Simply put, this is a case in which a court should not broaden an arbitration clause in application or incorporate it into putative separate agreements by implication. See *Globe Seaways, Inc. v. National Marine Engineers Beneficial Association*, 451 F.2d 1159 (2 Cir.), *affirming*, 337 F.Supp. 26 (S.D. N.Y.1971); *Proctor & Gamble Independent Union v. Proctor & Gamble Mfg. Co.*, 312 F.2d 181 (2 Cir. 1962), *cert. denied*, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963); *A.B.C. Inc. v. American Federation of Television & Radio Artists, supra* at 1083. Since it is clear the parties neither intended to have an arbitrator decide whether a contract was formed nor reached agreement which could be the subject of arbitration, the Union is demanding submission of issues which are not arbitrable. Accordingly, UA's application for a stay of arbitration is granted and the Union's demand for arbitration is declared invalid.

The parties are directed to settle form of judgment on five (5) days notice.

SO ORDERED.