MOBIL OIL CORPORATION,
Petitioner-Appellant,

v.

LOCAL 8–766, OIL, CHEMICAL & ATOM-
IC WORKERS INTERNATIONAL UN-
ION, Respondent-Appellee.

No. 78–1535.

United States Court of Appeals,
First Circuit.

Argued March 12, 1979.

Decided June 22, 1979.

James J. Dean, New York City, with whom Putney, Twombly, Hall & Hirson of New York City, Joseph F. Ryan, and Lyne, Woodworth & Evarts, Boston, Mass., were on brief, for petitioner-appellant.

Nathan S. Paven, Boston, Mass., with whom Richard L. Alfred, and Flamm, Kaplan, Paven & Feinberg, Boston, Mass., were on brief, for respondent-appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, PETTINE, District Judge.*

* Of the District of Rhode Island, sitting by designation.

BOWNES, Circuit Judge.

Petitioner-appellant Mobil Oil Corporation (Mobil) brought a motion to vacate an arbitrator's award in the District Court of Massachusetts, pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 and 9 U.S.C. § 10. Local 8–766, Oil, Chemical & Atomic Workers International Union (Union) filed a cross-motion to confirm the arbitrator's award, to dismiss Mobil's motion as untimely, and to recover attorney's fees and the costs of suit. The district court issued a memorandum opinion and order in which it denied Mobil's motion to vacate, denied the Union's motion to dismiss, and allowed the Union's motion to confirm the arbitrator's award and remedy. The Union's motion for attorney's fees was denied, but the district court awarded the costs of suit to the Union. There are two issues: (1) did the district court make an independent determination that the dispute was arbitrable, and (2) did the district court err in confirming the arbitration award.

This dispute stems from Mobil's decision to subcontract all the delivery of fuel oil and gasoline at its Bangor, Maine, facility beginning in August of 1976. The Union, which had represented all of Mobil's operating department employees in the northeastern states since 1965, filed a grievance shortly after Mobil announced that it would no longer require the services of the four Union truckers employed at the Bangor terminal. The grievance was submitted to an arbitrator, John W. McConnell, with the issue stipulated as follows: "Did the Company violate the collective bargaining agreement when it contracted out the work of driving gas tank trucks at the Bangor Terminal? If so, what shall the remedy be?"

Mobil maintained that the dispute concerning subcontracting was not arbitrable because there was no express provision regarding subcontracting in the collective bargaining agreement and the arbitration

clause in the agreement limited the scope of the arbitrator's power to "render a decision of a proper grievance by interpreting the express provisions of this agreement." The Union countered that the management action, subcontracting away all of the Union delivery jobs, undermined the foundation of the labor agreement and was arbitrable, with or without reference to any specific provisions in the agreement. Additionally, the Union charged that subcontracting did violate express provisions in the agreement, namely the recognition clause and the seniority, wage, and classification provisions.

The arbitrator agreed with the Union that the dispute was arbitrable. He discussed the bargaining history on the issue of subcontracting and, after balancing the arguments of both sides, concluded that Mobil did violate the collective bargaining agreement when it contracted out the work of driving gas tank trucks at the Bangor terminal. The arbitrator noted that Mobil had engaged the services of subcontractors in the past to supplement the Union work force at its various terminals, including Bangor, but that this was the first occasion in which Mobil completely replaced the Union employees with independent haulers. He found it telling that Mobil refused to negotiate any adjustment in hourly rates at the Bangor terminal in order to make the Union drivers more competitive with the subcontractor haulers. The arbitrator concluded:

> Without questioning the good faith of the Company in its search for more economical operations, the facts lead inevitably to the conclusion that the effect of the subcontracting at Bangor was the avoidance of the terms and conditions of the contract and a significant precedent for the potential elimination of all tank truck operation in the bargaining unit.

I. *Did the District Court Meet Its Obligation to Make Its Own Determination on Arbitrability?*

Neither Mobil nor the Union contests the principle that the court, in reviewing an arbitrator's award, has an obligation to make its own determination of the arbitrability of the dispute presented. "Arbitrability is a question which the district court must pass on in the first instance." *Local 205, UE v. General Electric Co.*, 233 F.2d 85, 101 (1st Cir. 1956), *aff'd*, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957). *See also Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 n.7, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *International Brotherhood of Teamsters, Local 249 v. Western Pennsylvania Motor Carriers Association*, 574 F.2d 783, 787 (3d Cir. 1978). The parties, however, do not share the same view of the trial court's treatment of arbitrability. Mobil claims that the district court did not discuss nor meet its obligation to determine arbitrability, but, instead, accepted the arbitrator's finding. The Union argues that the district court did make its own determination of arbitrability, finding that the dispute was arbitrable because the subcontracting involved "express terms" of the contract.

■ Our review of the district court's memorandum leads to the conclusion that the court below did not make its own independent determination of arbitrability. We set forth the relevant portion of the district court's discussion:

> The petitioner bases its motion on an allegation that the arbitrator exceeded his authority under the collective bargaining agreement. It asserts that he was limited to deciding disputes arising under the "express terms" of the contract, that a provision forbidding contracting out was rejected at the bargaining table, and that contracting out was beyond the arbitrator's purview. *These arguments might be of greater weight had the arbitrator not dealt at length in his opinion with arbitrability.* He found that contracting out could undercut "express terms" of the contract dealing with recognition, seniority, job classification, and wage scales. Arbitrator's Opinion, May 25, 1977, p. 6.

"[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."

United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). I find the arbitrator's conclusions are rationally supportable, and judicial intervention is not appropriate. Accordingly, the motion to vacate is DENIED" (emphasis added).

 We agree with Mobil that the district court limited itself to a review of the arbitrator's decision. The only logical interpretation that can be given to the italicized sentence is that the district court misunderstood its duty to decide independently the question of arbitrability and erroneously deferred to the arbitrator's determination that the subcontracting dispute was arbitrable. Its citation to page 599 of *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), makes it evident that the court blended the issue of arbitrability with the deference due the arbitrator's interpretation of the contract. In *Enterprise Wheel*, the Court stated at 599, 80 S.Ct. at 1362:

As we there emphasized [referring to *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564 [80 S.Ct. 1343, 4 L.Ed.2d 1403] (1960)], the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

This, however, referred only to the second step of the court's review process.[1] The first step is a determination of the arbitrability of the dispute. While the court may refer to an arbitrator's discussion on arbitrability in order to aid its determination, *F & M Schaeffer Brewing Co. v. Local 49, International Union of United Brewery Workers*, 420 F.2d 854, 856 (2d Cir. 1970); *Garlick Funeral Homes, Inc. v. Local 100, Service Employees International Union*, 413 F.Supp. 130, 134 (S.D.N.Y.1976), it must make its own independent determination of this threshold issue. There is no language in the court's opinion indicating that this obligation was met.

This, however, does not require a remand. Since arbitration is a matter of contract, *Gateway Coal Co. v. United Mine Workers of America*, 414 U.S. 368, 374, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974), *Local 205, UE v. General Electric Co.*, supra, 233 F.2d at 101, this court can, itself, determine this question of law. In *Necchi v. Necchi Sewing Machine Sales Corp.*, 348 F.2d 693 (2d Cir. 1965), *cert. denied*, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966), the court found that the district court had not met its obligation to decide whether the dispute was arbitrable. Rather than remand, however, the court decided the issue itself. Writing for the court, Judge, now Justice, Marshall wrote:

The District Court failed to fulfill this duty and we thus have the alternative of making the determination for ourselves or remanding to the District Court. In respect to all the items, even on the meager record before us, the question of arbitrability seems so clear that no useful purpose would be served by leaving the question to be resolved by the District Court upon further proceedings, and in order to expedite this litigation, we will rule on the arbitrability of each of the items.

*Id.* at 697.

The factual record here is complete and the legal issue issue so clear that nothing

---

1. For an excellent discussion of the standard of reviewing arbitration awards, *see Victor Elec. Wire & Cable Corp. v. IBEW*, 411 F.Supp. 338, 342–43 (D.R.I.), *aff'd without a published opinion*, No. 76–1222 (1st Cir. November 12, 1976).

would be gained and much lost in terms of time and additional expenses by a remand.

## II. Did the District Court Err in Confirming the Arbitrator's Award?

[4] The scope of judicial review of arbitration awards is narrow and has been definitively cast by the Supreme Court in the *Steelworkers* trilogy: *Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In *American Manufacturing Co., supra*, 363 U.S. at 568, 80 S.Ct. at 1346 the Court's limited role was defined as "ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator." The Court held in *Warrior & Gulf* that

> arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. *An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not suscepti-*

ble of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage (emphasis added).

*Id.* 363 U.S. at 582–83, 80 S.Ct. at 1353.

■ A federal court is empowered to vacate an arbitrator's award only on the grounds specified in 9 U.S.C. § 10.[2] As this court noted in *Local Union No. 251, International Brotherhood of Teamsters v. Narragansett Improvement Co.*, 503 F.2d 309 (1st Cir. 1974): "The courts are precluded from considering factual or legal issues which are by voluntary agreement made the subject of arbitration. Judicial intrusion is restricted to extraordinary situations indicating abuse of arbitral power or exercise of power beyond the jurisdiction of the arbitrator." *Id.* at 312. Mobil argues that judicial intrusion is mandated here because the arbitrator exceeded his jurisdictional powers within the meaning of 9 U.S.C. § 10(d) by going beyond the parameters of the collective bargaining agreement.

■ We examine Mobil's contention mindful of the strong presumption favoring arbitration, 29 U.S.C. § 173(d); *Nolde Bros. v. Local No. 358, Bakery Workers*, 430 U.S. 243, 254, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977); *Warrior & Gulf, supra*, 363 U.S. at 582–83, 80 S.Ct. 1347; *Westinghouse Elevators v. S. I. U. de Puerto Rico*, 583 F.2d 1184, 1186 (1st Cir. 1978).

■ In determining whether the subcontracting dispute was arbitrable, the court looks to the terms of the arbitration agreement, for "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he

---

2. "In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators."

has not agreed so to submit." *Atkinson v. Sinclair Refining Co., supra,* 370 U.S. at 241, 82 S.Ct. at 1320–21, quoting from *Warrior & Gulf, supra,* 363 U.S. at 582, 80 S.Ct. 1347. Similarly, we held in *Trailways of New England, Inc. v. Amalgamated Association of Street, Electric Railway & Motor Coach Employees,* 353 F.2d 180, 182 (1st Cir. 1965):

> Questions of arbitrability are not automatically resolved in the employer's favor by invoking the term "jurisdiction," any more than they are in the union's favor by asserting the existence of a "dispute." *Cf. Camden Industries v. Carpenters Local Union No. 1688, supra,* [353 F.2d 178.] Initially we look to the agreement to see what was stated to be arbitrable.

The pertinent sections of the collective bargaining agreement in effect at the time of the subcontracting dispute provide:

### Article XVII

#### *Grievances*

(a) A grievance is defined as a controversy between the Union and the Company or between an employee covered by this Agreement and the Company.

### Article XVIII

#### *Arbitration*

(a) Should satisfactory settlement of a grievance alleging a violation or misapplication of the express terms of this Agreement, which has been processed through all steps of the grievance procedure not be achieved, the Union may notify the Company in writing by registered mail, return receipt requested, within thirty (30) calendar days after the date of the receipt of the decision by the Manager of Field Operations, of the Union's request to arbitrate the grievance. In the event such notice is not given within these thirty (30) calendar days, the grievance shall not be subjected to arbitration.

. . . . .

(c) The sole function of the arbitrator shall be to render a decision of a proper grievance by interpreting the express provisions of this agreement. This Agreement is the sole source and limit of the jurisdiction, authority and power of the arbitrator, and he shall not have jurisdiction or authority to render a decision that adds to, deletes from, modifies or expands the express terms of the Agreement.

Mobil argues that the arbitration clause is a restrictive one, claiming that Article XVIII(c) limits the power of the arbitrator to "interpreting the express provisions of this agreement." It maintains that, because there was no express provision in the contract pertaining to subcontracting, the dispute was beyond the arbitrator's reach and, hence, his award should have been vacated by the district court.

The Union counters that, according to Article XVIII(a), a dispute "alleging a violation or misapplication of the express terms" of the agreement is arbitrable and that the subcontracting violated express provisions of the collective bargaining agreement, namely, the recognition clause and the seniority, wage and classification provisions.

We find *Warrior & Gulf, supra,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, controlling. There, the company subcontracted out work previously performed by members of a bargaining unit, spurring the filing of a grievance. The collective bargaining agreement provided that, "[s]hould differences arise . . . as to the meaning and application of the provisions of this Agreement," the grievance procedure should be followed. It excluded from arbitration "matters which are strictly a function of management." The union rested its claim on a "no lockout" clause of the agreement. The court of appeals affirmed the district court's dismissal of the complaint on the basis that subcontracting was a function of management within the meaning of the exclusion in the arbitration clause. The Supreme Court reversed, holding that the dispute was arbitrable. The Court repeated the refrain of the companion *Steelworker* cases: that arbitration is favored; that the arbitrator is best suited to decide the merits of labor disputes; and that the courts should keep their interference in the arbitration process to a minimum. The appropriate level of judicial inquiry in arbitrability disputes was defined as follows:

In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator.

*Id.* 363 U.S. at 584–85, 80 S.Ct. at 1354. *Warrior & Gulf* instructs that a dispute is arbitrable unless it can be said "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" and unless there is an "express provision excluding a particular grievance from arbitration." *Warrior & Gulf, supra,* 363 U.S. at 582–83 and 585, 80 S.Ct. at 1353–1354. Speaking to the specific issue of subcontracting, the Court had this to say:

Contracting out work is the basis of many grievances; and that type of claim is grist in the mills of the arbitrators. A specific collective bargaining agreement may exclude contracting out from the grievance procedure. Or a written collateral agreement may make clear that contracting out was not a matter for arbitration. In such a case a grievance based solely on contracting out would not be arbitrable. Here, however, there is no such provision.

*Id.* at 584, 80 S.Ct. at 1354 (footnote omitted). *See also Peerless Pressed Metal Corp. v. IEU,* 451 F.2d 19, 20 (1st Cir. 1971), *cert. denied,* 414 U.S. 1022, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973); *Victor Electric Wire & Cable Corp. v. IBEW,* 411 F.Supp. 338, 342–43 (D.R.I.), *aff'd without a published opinion,* 546 F.2d 413 (1st Cir. 1976).

■ Examining the language of the arbitration clause, we find here no express pro-

vision excluding subcontracting from arbitration. What we do discover is a slightly modified version of the standard arbitration clause. The language limits the arbitrator to interpreting express provisions of the collective bargaining agreement. The Union cited the express provisions of the bargaining agreement which it alleged Mobil violated by subcontracting. After reading the arbitrator's opinion, we conclude that he did interpret the terms and conditions of the agreement. Although Mobil charges that the arbitrator based his decision "only upon presumed and implied obligations of the parties," we find in the arbitrator's decision specific reference to violations of the recognition clause, seniority, and wage and classification provisions of the agreement.

Many of the cases on which Mobil relies are inapposite as they contain express provisions excluding a grievance from arbitration. In *IUE v. General Electric Co.,* 407 F.2d 253 (2d Cir. 1968), *cert. denied,* 395 U.S. 904, 89 S.Ct. 1742, 23 L.Ed.2d 217 (1969), the court noted that the parties extensively revised the language in the arbitration clause in the wake of the *Steelworkers* trilogy, drawing up exclusionary clauses so elaborate that the court likened them to a "trust indenture." *Id.* at 258.

*Mobil* also relies heavily on *Independent Petroleum Workers v. American Oil Co.,* 324 F.2d 903 (7th Cir. 1963), *aff'd by an equally divided Court,* 379 U.S. 130, 85 S.Ct. 271, 13 L.Ed.2d 333 (1964). While that case and the one in this dispute share the same fact that a grievance was submitted concerning subcontracting, there the similarity ends. In *Independent Petroleum,* the employees claimed that the employer violated the recognition clause of the collective bargaining agreement. The company countered that the dispute was not arbitrable and that, in any event, either stare decisis or collateral estoppel barred review of the dispute. The arbitration clause limited compulsory arbitration to "[q]uestions directly involving or arising from applications, interpretations or alleged violations of the terms of this agreement." *Id.* at 905. Additionally, section 10(d) provided for voluntary arbitration of disputes not covered by the agree-

ment and stated explicitly that either party could refuse to arbitrate these matters. The court's reasoning had two parts. First, it found that the recognition clause made no mention of either arbitration or subcontracting and then rejected the union's more general argument that refusal to bargain on any issue triggered the compulsory arbitration clause, noting that the parties' agreement provided for voluntary arbitration of certain disputes. Second, the court held that, even if the company were obligated to arbitrate the dispute, collateral estoppel foreclosed the union's arguments. The court's reasoning on the first issue, even if treated as more than dicta to its collateral estoppel holding, is not pertinent to this case. The arbitration clause in the instant dispute does not involve a voluntary arbitration provision, and the union was able to identify express provisions of the agreement which were violated by the subcontracting.

We likewise consider Mobil's reliance on *Boeing Co. v. International Union, UAW*, 349 F.2d 412 (3d Cir. 1965), misplaced. In that case, the court held not arbitrable a dispute concerning the employer's fowl decision to discontinue the distribution of turkeys at Christmas. Mobil urges that the "only difference" between *Boeing* and the instant case is that, in the former, the arbitration clause limited the arbitrator's power to "specific" provisions of the agreement while, in this case, the agreement deals with "express" provisions. The difference between the two is more than mere semantics. In *Boeing*, the union conceded that it could not point to any provision in the collective bargaining agreement regarding the distribution of turkeys. *See Boeing Co. v. International Union, UAW*, 231 F.Supp. 930, 932 (E.D.Pa.1964). The Union, here, however, as expressly found by the arbitrator, complained that, because the subcontracting did away with jobs, it violated specific sections of the collective bargaining agreement, namely, the seniority, wages, classification, and recognition clauses. The permanent elimination of jobs goes to the heart of a collective bargaining agreement and does implicate these basic provisions.[3]

Mobil urges us to consider the Union's unsuccessful attempts to include a provision against subcontracting in the collective bargaining agreement as pointing to its exclusion from arbitration. It argues that this extrinsic evidence establishes that the subcontracting dispute was not arbitrable. We recognize that there is a split among the circuits which have considered the use of prior bargaining history in determining arbitrability.[4] We are guided by the dictate of *Warrior & Gulf, supra*, 363 U.S. at 585, 80 S.Ct. at 1354, which cautioned against "becom[ing] entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause." The lower courts in *Warrior & Gulf* found compelling the fact that the union had been unable to insert a provision limiting subcon-

---

**3.** The other cases cited, but not discussed by Mobil, are also not apposite. In *Local 13, Int'l Fed. of Professional & Technical Eng'rs v. Gen. Elec. Co.*, 531 F.2d 1178 (3d Cir. 1976), the court held not arbitrable a dispute pertaining to work transfer because the arbitration agreement had an explicit provision excluding "matters relating to the management of the Company, including but not limited to the right to control operations and the assignment of work." *Id.* at 1180. The arbitration clause in *ABC, Inc. v. American Fed'n of Television and Radio Artists*, 412 F.Supp. 1077 (S.D.N.Y.1976), provided, "[t]his agreement applies, and is limited in its application, to staff announcers employed by the New York office of the Company." *Id.* at 1080. A grievance brought by a Washington, D.C. staff announcer was held not arbitrable because he was never employed by the New York office. In *Halstead Industries,*

*Inc. v. United States Steelworkers*, 432 F.Supp. 109 (W.D.Pa.1977), employee dissatisfaction with work assignment was deemed not arbitrable in light of the arbitration clause which contained a detailed management rights clause. The narrowest arbitration clause is that set forth in *Cook v. Gristede Bros.*, 359 F.Supp. 906 (S.D.N.Y.1973), which provided for arbitration only with respect to discharge of an employee for just cause. The employees' dispute involved the company's decision to change its method of buying products, and the court held the dispute not arbitrable.

**4.** *See Local 13, Int'l Fed'n of Professional & Technical Eng'rs v. Gen. Elec. Co.*, 531 F.2d 1178, 1183 n.13 (3d Cir. 1976), for a summary of the varying approaches taken by other circuits on this issue.

tracting in its collective bargaining agreement. The Supreme Court, in reversing the finding of nonarbitrability, did not mention this prior bargaining history. Here, evidence of the Union's effort to insert an express provision against subcontracting was examined by the arbitrator and played an important part in his resolution of the merits of the dispute.[5] We refuse to pry open the back door of this dispute by considering the prior bargaining history of these parties.

Most recently, in *Nolde Bros. v. Local No. 358, Bakery Workers, supra,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), the Supreme Court reiterated the continued vitality of the *Steelworkers* trilogy. The Court rejected the employer's argument that the dispute concerning severance pay was not arbitrable because the contract had expired. The Court reasoned that, since nothing in the arbitration clause expressly excluded a dispute arising under the contract which occurred after the contract terminated, the dispute was arbitrable. Relevant to the case at hand, it stated: "It is also noteworthy that the parties drafted their broad arbitration clause against a backdrop of well-established federal labor policy favoring arbitration as the means of resolving disputes over the meaning and effect of collective-bargaining agreements." *Id.* at 254, 97 S.Ct. at 1073. The Court then cited *Warrior & Gulf, supra,* 363 U.S. at 582–83, 80 S.Ct. 1347, for the proposition that an order to arbitrate should not be denied unless it could be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. It stated that the parties were held to have been conscious of these well-established federal policies when they agreed initially to settle disputes through arbitration. *Nolde, supra,* 430 U.S. at 255, 97 S.Ct. 1067. Failure to exclude a

dispute from the arbitration clause leads to the conclusion that the parties intended the matter to be arbitrable. *Ibid.*

Mobil and the Union are deemed to have been conscious of the strong federal policy favoring arbitration and the consequent need to specifically exclude from the arbitration agreement those disputes which they did not wish an arbitrator to decide. We consider it contrary to the teaching of the *Steelworkers* trilogy and progeny to find this subcontracting dispute not arbitrable, for it cannot be said "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf, supra,* 363 U.S. at 582–83, 80 S.Ct. at 1353.

*The order of the district court is affirmed.[6]*

---

5. In the section of his decision captioned "Discussion of the Issue on the Merits," the arbitrator stated the central issue as he viewed it.

 The two factors which must be weighed against one another, it seems to me, are, on the one hand, the Union's failure to secure through bargaining any restriction on the Company's right to subcontract despite repeated attempts to do so over a six year

period, and on the other, the unprecedented substitution by the Company of a subcontractor for a basic business function of the Division, namely, the delivery of oil and gas.

6. Mobil has petitioned this court to strike the addendum from the record, on the basis that this document was not before the district court. This motion is granted. Fed.R.App.P. 10.